Per Curiam.
The bill states that the defendant hired a negro to the complainant for a year, and took his bond for the hire ; that in one month the negro died ; that he tendered to him satisfaction for one month’s services, which he refused, but sued upon the bond and recovered. Upon this bill an injunction was granted. These statements are admitted in the answer. And the question is, whether the injunction shall be dissolved, and the defendant permitted to take out execution. The bill is founded upon a supposition that the consideration has failed. Let us examine this supposition : first, upon principles ; secondly, upon authority. When the thing purchased is liable from its nature to be impaired, or determined by a * contingency, that is allowed for in the diminution of the price. An estate for the life of the vendor, who may be expected to live 20 years, will be sold for a less sum than an estate for 20 years certain. The purchaser *184 is idemnified for the contingency by a proportionate abatement, and therefore takes it upon himself. If you purchase annually for the life of A, and A dies the next day, the purchase money shall not be refunded; and if not yet paid, the purchaser may be compelled. One agreed to purchase lands in Jamaica which were swallowed up by an earthquake before the conveyance was made to him, yet he was liable for the purchase money. 2 Vern. 423; 1 E. C. Ab. 170; 2 Ves. 422; 1 Bro. C. Rep. 156; 2 Vern. 280; 1 P. W. 61; 2 P. W. 410; 2 Bro. C. Rep. 17; 3 Br. Ch. C. 612. For the same reason, if you sell me a horse or other animal, and he die the next day, still the purchase money shall not be refunded, or if not yet paid, shall be paid. The consideration fails where the vendor cannot or will not transfer to the purchaser the thing contracted for. But if it be transferred and afterwards determined by a contingency to which it is naturally subject, that contingency is an appendage which was calculated on, and provided against, in fixing the price at the time of the purchase. And just so much is to be presumed to have heen deducted from the price a? would purchase an insurance against it, and it is either given to an insurer, or the purchaser keeps it, and becomes his own insurer. Suppose the purchase of a slave for the life of the absolute owner, and the absolute owner die the next day. Does this differ in reason from the case last put? The purchaser in this instance also submits to the contingency, and runs the risk. Suppose it be calculated that a slave wrill be fit for service for 20 years to come and .no longer, and I give <£100 for 20 years’ hire, and he die the next day, shall I be absolved from payment in this * case, and yet be compelled to pay, had I purchased him indefinitely, and not for 20 years ? Do I not in both instances purchase under a known and foreseen contingency ? and do I not in one case as well as the other provide for my own indemnification, in the reduced price which I gave for him? If I am subject to this loss in case of 20 years’ hire, how am I exempt in case of one year’s hire ? When I purchase an absolute ownership, or one for life, or 20 years, I become, for the time stipulated, an owner in the place of the absolute owner. I purchase the right of substitution, and am substituted in all respects as a husband takes his wife, for better for worse. And immediately the maxim becomes applicable, Qui sentit eommodum debet sentiré et onus. The vendor who transfers to me this *185 power and ownership, has done all that he contracted for ; he has performed the consideration on his part. Immediately afterwards I may bring trespass against him, if he take .the' slave from me, or trover or detinue, and recover against him for his intrusion upon my property. Before this period, the vendor was exposed to the loss of his services by death, sickness, or running away ; I was bound to find him clothes, food, medical aid, pay his taxes, defend him from wrongs. Immediately after this period, the person substituted is bnerated with all these casualties and duties. And there is no hardship in this. For what is the price that the owner should receive for his services in case of a contract to be paid for his services ? Retaining the control over him, feeding, clothing him, and remaining liable to all the aforesaid consequences. It would probably be half a dollar for every working day in the year, amounting to $150 or more. But when I give you the ownership of him for a year, then deducting for all these casualties and duties, the absolute owner will take perhaps not quite half this sum for parting with the power over him for one year. Have you a right * after this to throw upon the absolute owner the loss occasioned by any of these casualties, should they fall in your time ? If he is still to bear the expense of medical aid, and loss of time by running away or sickness, and the other expenses and burdens before enumerated, there will be exhausted perhaps the one half of the sum total which his services are worth for one year, and which the owner agrees to take as the price of the hire ; and the person taking to hire will be the clear gainer of the other half of the sum total which the services of the slave amount to in the year above those necessary expenditures, which are placed upon the owner. He runs the risk of the slave’s life, and gets nothing; he that takes to hire runs no risk, and gets all the excess acquired by his labor. Upon principle, then, the consideration only fails when the temporary ownership and power over the slave is withheld from him who has bargained for the temporary ownership. How does this case stand upon authorities? 1 Henning & Munford makes a difference between a loss by the death of a slave, and one occasioned by sickness or running away. The grounds of this distinction are not stated, and if there be a difference in principle, this court is unable to perceive it. Analogous cases proceed upon the principles which this court is now adopting. The lessee of a house *186 which happens to be burnt or occupied by an enemy during the whole or part of the term, is not therefore exempted from payment. He is the owner for his time as much as the owner in fee is for his time, and therefore must bear the loss accruing in his time. The decisions at law upon this point are, Dy. 33 (a); Alleyn’s Reports, 26; Com. Rep. 627; 2 Ld. Ray. 1477; 4 Ba. Ab. 370; 2 Str. 763; 1 Term, 310, 710; 6 T. 650, 651. And the rule of law established has never been impaired in equity. 1 Ch. Ca. 83; Amb. 619; 3 Anstruther, 687; 1 Fonb. 379; 1 Dall. 214, 215; which latter case is considered to be very material, for there the court applied to it the principles of equity, and seemingly * with a disposition to relieve the lessee if possible, and yet could find no principle which supported the position that the lessee could be relieved in equity. The one volume of Rutherf. Institutes, 254, is opposed to these decisions; but perhaps his opinion', which only professes to proceed on principles of natural justice, is no better fortified than are the uniform decisions given by our municipal judges for so great a length of time. And upon what grounds are these decisions ? Not a difference of natures between the securities ; the one being under seal, the other not. For that would be no obstacle to relief in equity, where the substance and not the form is regarded. But upon the ground that the consideration has not failed, though the premises be burnt down, or ruined by flood, or be occupied by an enemy; for that these are contingencies which he has purchased together with the term or temporary ownership, and which he has been paid for taking upon himself by a commensurate deduction from the consideration money. It then follows, by parity of reasoning, that neither is the temporary owner of a slave exempt from paying the price of his hire, in case the slave die within the year. He is the temporary proprietor; he is substituted for that term in place of the absolute owner, and is subject to all the duties and to all the casualties which may happen in that time, so far as his interest reaches, unless there be stipulations in his favor to the contrary. Upon the falling out of any of these contingencies, the purchase money or consideration agreed to be given is not in any degree affected thereby, and can neither be revindicated or subtracted. The injunction therefore must be dissolved.
N. B. The like opinion, founded upon the same principles, was given in Saunders v. Kemp, Nashville, August term, 1827, and the case decided upon them.
*187 See, as to locaiio rei, Young v. Forgey, 4 Hay. 10; Nelson v. Gilliam, 7 Yer. 474; Overton v. Bigelow, 10 Yer. 48; Wharton v. Thompson, 9 Yer. 45. As to failure of consideration, Stephenson v. Yandle, 3 Hay. 109, note sub fin. See King’s Digest, 1040, 3567-68.